UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO INFORMATION TECHNOLOGY MANAGEMENT SERVICES INC. | Case No. 24-mc-152-ABJ-MJS |

## MEMORANDUM OPINION AND ORDER

This action centers on a third-party subpoena in a heavily litigated trade-secrets dispute pending in the U.S. District Court for the District of Minnesota. Petitioner Plus One, LLC ("Plus")—plaintiff in the Minnesota action—moves to compel compliance with a Rule 45 document subpoena that it issued to Information Technology Management Services Inc. ("ITMS"). (ECF No. 1.) ITMS opposes, at least in part. Separately, Capital Relocation Services L.L.C. ("CapRelo")—defendant in the Minnesota action—moves to intervene and for a protective order, principally arguing that Plus's subpoena improperly seeks discovery of CapRelo's "source code" and other sensitive information in a manner that violates the District of Minnesota's protective order governing discovery. (ECF No. 9.) The matter is referred to the undersigned pursuant to LCvR 72.2(a). Because ITMS consents to transfer to the District of Minnesota, and because the Court finds "exceptional circumstances" warranting such a transfer in any event, *see* Fed. R. Civ. P. 45(f), the Court **TRANSFERS** the pending motions to the District of Minnesota.

### BACKGROUND

This case arises against the backdrop of an underlying lawsuit between Plus and CapRelo in the District of Minnesota. As Plus describes it, CapRelo and Plus are "competitors who each provide software solutions to other companies … in connection with managing employee

relocation benefits." (ECF No. 16 at 4.)[1] According to Plus, CapRelo unlawfully misappropriated "Plus's trade secrets and confidential information … embodied in Plus's software product called 'Point C' … to create its own competing software product, called CompanionFlex." (*Id.*) Plus asserts that "CapRelo then offered and licensed [CompanionFlex] to Walmart, thereby tortiously interfering with Plus's business relationship[.]" (*Id.*) CapRelo denies the claims, and the parties have been enmeshed in litigation for the past eighteen months.

As relevant here, Plus served a Rule 45 document subpoena on third party ITMS. Plus seeks discovery from ITMS in the underlying case because CapRelo reportedly engaged ITMS to help create "the accused CompanionFlex product." (*Id.*) The subpoena called for production of materials covered by eleven separate requests. As things presently stand—at least as clarified by counsel at the recent hearing, following ITMS's production of some responsive materials—three of those requests continue to form the crux of the outstanding disputes:[2]

> Request No. 5: All documents and communications relating to Companion, CompanionFlex, and any predecessors or components thereof, including but not limited to source code, technical specifications, technical requirements, software description, user guides, code release logs, version releases, updates and/or code repository and documentation relating to any Core-Flex Program created, designed, built or developed by 1Rivet.
>
> Request No. 9: An operable copy of, including credentials to allow access to all user and administrator account types for, each version of any software You contributed to or participated in designing, building, or developing for JK Moving and/or CapRelo or received by You from 1Rivet, JK Moving and/or CapRelo, including, but not limited to, access and credentials for all user and administrator,

---

[1] The page numbers cited in this ruling are the ones assigned by the electronic filing system.

[2] This summary is based on the Court's discussions with counsel, but it is not meant to foreclose other disputes. For example, during the hearing, Plus said that ITMS did not produce any materials in response to Request Nos. 8 and 11; ITMS said this is because it has no responsive documents to produce. To the extent these (or other) disputes remain, the parties may address them to the issuing court after transfer.

> RMC and/or other back-end user access as it would exist in an operable or otherwise working manner as it existed for each user to of the Core-Flex Program.
>
> Request No. 10: For each version of software produced in response to Request No. 9, the source code underlying each version, and including all technical, design, and development documentation (including, e.g., source code, database designs, requirements documents, Jira tickets, Git commit data) for each version of or revision to the Core-Flex Program, any API or API components for or used with any of the foregoing, at any stage of development and whether released or not, from November 2020 to the present.

One of the key reasons these requests remain in dispute is because of their potential interplay with the operative protective order governing discovery in the Minnesota action. Plus and CapRelo negotiated—and the District of Minnesota (Magistrate Judge John F. Docherty) approved and entered—an operative protective order in the underlying case to govern discovery of "trade secrets and/or confidential information." (*See* D. Minn. Case No. 23-cv-2016-KMM-JFD, ECF No. 123, Amended Protective Order (Mar. 8, 2024).)[3] Section 6 of that protective order, specifically, speaks to discovery of "Source Code Material," and it sets forth fourteen separate subparagraphs that impose "additional restrictions" on such discovery. Among other things, the order provides that access to "Source Code Material shall be provided only on 'stand-alone computer(s)" that should be "located at the producing-party's Counsel's office(s)"; that the producing party "may visually monitor the activities of the receiving Party's reviewers during any source code review"; that except for limited circumstances, "no electronic copies of Source Code Material shall be made without prior written consent of the Producing Party"; and more. (*See id.*)

According to CapRelo, these provisions are the culmination of extensive negotiations to establish a "stringent protocol to exclusively govern discovery of the parties' respective source code." (ECF No. 9-1 at 3.) In turn, CapRelo insists that the subpoena requests set forth above, all of which implicate "source code" or related information, run afoul of the protective order by

---

[3] Plus filed a copy of the District of Minnesota's protective order with its motion. (ECF No. 1-2 at 12–32.)

3

pursuing those materials from a third party outside the governing protocol. Plus reads things differently, maintaining that the District of Minnesota's protective order does not prohibit discovery of "source code" and related information from third parties like ITMS.

Plus provided CapRelo with pre-service notice of its subpoena on August 29, 2024, in keeping with Fed. R. Civ. P. 45(a)(4). Plus then served the subpoena on ITMS on September 9, 2024, setting a return date of September 19, 2024, with production to be made at Plus's counsel's offices in Washington, DC. ITMS later contacted Plus's counsel to request an extension through October 11, 2024, stating that ITMS would "review and provide all the required materials in an accurate and comprehensive manner" and that ITMS was "committed to fully complying with the subpoena." (ECF No. 1-2 at 100.) Plus agreed. But then, October 11 came and went without any production or further outreach from ITMS. Neither did ITMS serve any objections or seek court intervention. For its part, CapRelo likewise never communicated any concerns to Plus about the subpoena, and it did not seek any sort of court intervention prior to the production deadline, whether in this Court or the District of Minnesota. CapRelo did, however, communicate with ITMS about the subpoena several times after receiving notice about it from Plus.

On November 7, 2024, Plus initiated this enforcement action, filing a motion to compel compliance with the subpoena and for contempt sanctions against ITMS based on its failure to respond. (Plus filed here because this District encompasses the place for compliance.) On November 25, 2024, ITMS finally resurfaced. It produced documents in response to some of the subpoena requests, and it separately filed an opposition to Plus's motion, mostly to argue that the dispute was moot. The same day, CapRelo filed a motion to intervene and sought a protective order as to parts of the subpoena, focusing on its theory that the subpoena violates the District of Minnesota's protective order and its protocol for discovery of "Source Code Material." Additional

4

briefing followed, and the Court held a hearing on December 17, 2024, after which the Court took Plus's motion and CapRelo's motion(s) under submission. This ruling now follows.[4]

## DISCUSSION

Third-party subpoenas are governed by Federal Rule of Civil Procedure 45. As relevant here, if the person subject to a subpoena fails to properly or fully respond, Rule 45 allows the serving party to move to compel production in "the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). But "[w]hen the court where compliance is required did not issue the subpoena," as in this case, "it may transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Both bases for transfer under Rule 45(f) are triggered here.

For starters, ITMS expressly consents to transfer to the District of Minnesota. (ECF No. 26, Hearing Tr. 7:7–8:1.) This alone justifies transfer under Rule 45(f).[5] But there is more.

The broader context of the underlying litigation, coupled with the nature of some of the parties' key arguments surrounding the subpoena, reveals the sort of "exceptional circumstances" warranting transfer even absent ITMS's consent. Rule 45 does not define "exceptional circumstances," but the caselaw provides guidance. As an initial matter, this Court should not "assume that the issuing court is in a superior position to resolve subpoena-related motions." *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 287 (D.D.C. 2015). Rather, it should consider a range of factors to determine whether the issuing court is "in a better position

---

[4] During the hearing, Plus withdrew its contempt request against ITMS, and so that aspect of Plus's motion was denied as withdrawn and is no longer before the Court. (*See* Minute Order, Dec. 17, 2024.)

[5] In fact, as confirmed during the hearing, all parties are amenable to transfer to the District of Minnesota. Beyond ITMS, CapRelo expressly consented, whereas Plus confirmed it "would not object." (ECF No. 26, Hearing Tr. 6:22–8:1.) Even if Plus did object, the analysis would not change because the consent provision of Rule 45(f) focuses on the party subject to the subpoena, not the party issuing it. But in any case, the parties' universal acquiescence to transfer further convinces the Court that it is the right approach here.

to rule on the motion due to its familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Id.* at 288 (cleaned up). These factors typically include "case complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Id.*; *see also In re Subpoena to Nat'l Acad. of Scis.*, 347 F.R.D. 45, 48 (D.D.C. 2024); *In re Braden*, 344 F. Supp. 3d 83, 90 (D.D.C. 2018); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 376 (D.D.C. 2017); *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). Courts also consider whether transferring the matter is in "the interests of judicial economy and avoiding inconsistent results." *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014). Applied here, these considerations tilt toward transfer.

  First, the core disputes that remain all implicate—at least in some sense—the parties' dueling interpretations of the District of Minnesota's protective order. CapRelo argues that several requests within Plus's subpoena violate the "restrictive protocol for source code discovery and inspections" imposed by the District of Minnesota. (ECF No. 9-1 at 2.) Plus says otherwise. It insists that "nothing" in the protective order "precludes the use of non-party discovery for the production of documents, including source code." (ECF No. 16 at 18.) Based on this Court's reading, the protective order does not explicitly address this precise issue. Section 6, which covers "Source Code," neither allows nor disallows source-code discovery from third parties, at least not in any express terms. Each side points to language and context to support its preferred reading, but neither interpretation strikes this Court as unavoidably correct. Given that, and the fact that source-code discovery is such a core focus of the underlying case—as reflected in part by the fact that Section 6 spans more than six pages and fourteen separate subparagraphs—this Court is reticent to inject itself into the underlying litigation by announcing its own determinative reading of

another court's order. Instead, for reasons of both practicality and comity, the Court believes it far more appropriate for the District of Minnesota to define the contours of its own order. *See, e.g.*, *In re All. Healthcare Partners, LLC*, 2022 WL 16527952, at *5 (D. Ariz. Oct. 28, 2022) (finding exceptional circumstances under Rule 45(f) where, among other factors, the subpoena motions required "determining the scope of [the] protective order" in the underlying case); *Pharmacare U.S., Inc. v. Season 4, LLC*, 2024 WL 2301407, at *3 n.2 (D.N.J. May 21, 2024) (similar, where parties' arguments focused in part on the reach of the issuing court's "stipulated protective order governing confidential documents"); *Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 48 (D.D.C. 2016) (finding the issuing court "better positioned" to resolve arguments about "inappropriate dissemination of confidential information in violation of [the issuing court's] protective order").

Second, and more broadly, the heavily litigated nature of the underlying case overall—and the issuing court's hands-on involvement throughout—further reflects why it would be most appropriate to allow the District of Minnesota to assess and resolve this latest dispute. Based on the Court's review of the docket in the Minnesota action, across the case's eighteen-month history, Magistrate Judge Docherty has already considered and ruled on a variety of discovery-related motions and conducted multiple hearings with the parties related to discovery issues and other matters. *In re Subpoena to Nat'l Acad. of Scis.*, 347 F.R.D. at 49 ("[T]he fact that the [issuing court] has already supervised substantial discovery weighs in favor of transfer."); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 378–79 (same). Further, the underlying case is nearing the end of discovery—this Court understands that the discovery cutoff was recently extended until late February 2025—and other weighty motions seem to be pending in the Minnesota action, including a motion for sanctions. Due to its "significant involvement" in the underlying case to date, the Court concludes that the "issuing court is especially informed to rule"

7

on the pending motions surrounding Plus's subpoena to ITMS. *Duck v. United States Sec. & Exch. Comm'n*, 317 F.R.D. 321, 325 (D.D.C. 2016) (applying similar analysis).

The District of Minnesota's familiarity with discovery in the underlying case may prove important, for instance, to CapRelo's and ITMS's arguments that Plus's third-party discovery efforts to ITMS should be foreclosed—or at least limited—because Plus reportedly did not fully pursue the same discovery from CapRelo (including by moving to compel). *See, e.g.*, *In re of Lucille Holdings Pte. Ltd.*, 2022 WL 1421816, at *16 (D.D.C. May 5, 2022) (observing that the burdensomeness analysis applicable to third-party subpoenas may require a court to limit discovery from non-parties that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Spottswood v. Washington Cnty.*, 2021 WL 838769, at *6 (D. Minn. Mar. 5, 2021) ("If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness pursuant to Rule 45."). This Court has a very limited sightline into the procedural history that would be relevant to this argument, whereas the issuing court will be better positioned to consider the broader context based on its longstanding oversight of discovery overall.

On the other hand, and as Plus argues, the fact that CapRelo did not promptly raise its concern that Plus's subpoena may violate the District of Minnesota's protective order after receiving notice of the subpoena—whether with Plus directly or with any court—could mean that CapRelo should not be permitted to challenge the subpoena now. (ECF No. 16 at 10–11.) The issuing court's interactions with counsel about other discovery matters during this period may influence its views on this and related arguments, based on a perspective this Court lacks.[6]

---

[6] Relatedly, as Plus also argues, ITMS may have likewise waived its right to object to the subpoena, including based on undue burden, by failing to timely serve objections or otherwise seek judicial relief. ITMS maintains otherwise, insisting that courts retain an independent obligation under Rule 45(d)(1) to protect against undue burden even absent timely objections. Other than reiterating its serious concerns with

There is certainly more that could be said about these issues. But the points above are sufficient to demonstrate why transfer is appropriate here, above and beyond the fact that ITMS consents to it (though, again, ITMS's consent alone would suffice). For at least these reasons, the Court concludes that the District of Minnesota is "in a better position to rule on the motion[s] due to its familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *UBS*, 113 F. Supp. 3d at 288 (cleaned up).

## CONCLUSION AND ORDER[7]

The Court **TRANSFERS** the remaining subpoena-related motions—specifically, Plus's motion to compel compliance (ECF No. 1) and CapRelo's motion to intervene and for protective order (ECF No. 9)—to the District of Minnesota for resolution as part of the underlying litigation. Upon transfer, the Clerk of Court shall close this miscellaneous action.

**SO ORDERED.**

Dated: January 3, 2025

MATTHEW J. SHARBAUGH  
United States Magistrate Judge

---

ITMS going completely dark on the subpoena—even after seeking and receiving an extension to respond to it from Plus, and even while simultaneously communicating with CapRelo about the subpoena—this Court leaves any issues of waiver to the issuing court following transfer.

[7] Because the Court is simply transferring to another court, this decision is a non-dispositive ruling that falls within the undersigned's jurisdiction. *See, e.g.*, *PharmaCare U.S.*, 2024 WL 2301407, at *2 ("Courts are in agreement that Rule 45(f) motions to transfer fall within the ambit of non-dispositive matters properly determined by a magistrate judge.") (cleaned up) (collecting cases); *Google, Inc. v. Digital Citizens All.*, 2015 WL 4930979 (D.D.C. July 31, 2015) (Rule 45(f) final order of transfer issued by magistrate judge).